UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DR. NAKIA S. BAYLIS, individually and as parent and legal guardian of her minor children, A.B and G.B; ADAM BAYLIS III, individual and as parent and natural guardian of his minor children, A.B and G.B;**

    Plaintiffs,

-vs-

Case No.
Hon.

**PORTAGE PUBLIC SCHOOL DISTRICT, JASON MESSENGER, SIDNEY BAILEY, BECKY MOON, and BOB HAYWORTH,**

    Defendants.

ALEXANDRIA J. TAYLOR (P75271)
Taylor Law Firm, PLLC
Attorney for Plaintiffs
19 Clifford Street, Fl 8
Detroit, MI 48226
Ph: (313) 960-4339
Fx: (313) 422-0934
ataylor@taylawfirm.com

**There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in this complaint.**

**COMPLAINT AND JURY DEMAND**

Plaintiffs, by and through their attorneys, Alexandria Taylor and Taylor Law Firm, PLLC, for their complaint against the above-named Defendants, state as follows:

1

**INTRODUCTION**

1. This is a civil rights action brought to redress violations of Plaintiffs' rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, 42 U.S.C. § 1983, and the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq., as well as other applicable laws.

2. Plaintiffs seek to hold Defendants accountable for subjecting minors A.B. and G.B. to a racially hostile educational environment, emotional distress, and other harms caused by the deliberate indifference of Defendants to ongoing racial harassment and discrimination.

3. Plaintiffs further seek relief for violations of the Due Process Clause, intentional infliction of emotional distress, negligence, and failure to train and supervise, which have caused severe psychological trauma, emotional distress, disruption of educational opportunities, and financial losses.

4. Plaintiffs demand a trial by jury on all issues so triable.

**JURISDICTION AND VENUE**

1. This action arises under the Fourteenth Amendment to the United States Constitution, the Civil Rights Act of 1964, 42 U.S.C. § 2000d, 42 U.S.C. § 1983, and the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

2. This Court has jurisdiction to hear this Complaint and to adjudicate the claims stated herein pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution and laws of the United States of America.

3. The Court also has supplemental jurisdiction with respect to claims arising under state law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391 because the events giving rise to this Complaint occurred in Kalamazoo County, Michigan, within the jurisdiction of this Court.

## PARTIES

5. Plaintiff Dr. Nakia S. Baylis is the stepmother and legal guardian of minor children A.B. and G.B., who are African American individuals residing in Kalamazoo County, Michigan.

6. Plaintiff Adam Baylis III is the biological father and natural guardian of A.B. and G.B.

7. Defendant Portage Public School District is a public agency of the State of Michigan with its headquarters and activities located in Kalamazoo County, Michigan.

8. Defendant Jason Messenger is the Principal of Portage West Middle School within the Portage Public School District and is sued in both his official and individual capacities.

9. Defendant Sidney Bailey is the Assistant Principal of Portage West Middle School within the Portage Public School District and is sued in both his official and individual capacities.

10. Defendant Becky Moon is a Counselor at Portage West Middle School within the Portage Public School District and is sued in both her official and individual capacities.

11. Defendant Bob Hayworth is a Bus Driver employed by Portage Public School District and is sued in both his official and individual capacities.

## STATEMENT OF FACTS

12.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

13.     Plaintiffs relocated to the Portage Public School District in 2019. Prior to this, the children had been attending 12th Street Elementary and later Portage West Middle School through Michigan's School of Choice program. Plaintiffs built a home in the Portage Public School District with the intention of ensuring their children could comfortably continue their education in the district after relocating.

14.     A.B. began attending Portage West Middle School in the 2021 school year, and G.B. joined in 2022. Both children experienced increasingly pervasive racial harassment throughout their time at the school. This harassment escalated during the 2023-2024 school year, with incidents occurring from the beginning of September 2023 until the children were pulled from school on November 1, 2023.

15.     Between September 5, 2023, and November 1, 2023, A.B. and G.B. were subjected to racist harassment both in person at school and through text messages and social media from fellow students. These incidents included derogatory slurs such as "nigger," "monkey," and "ape," as well as comments like "go pick some cotton." Despite the Plaintiffs raising these concerns with the school, the harassment continued unchecked, and no formal investigations or disciplinary actions were taken. (*See* Exhibit 1, Racist Text Messages; *See* Exhibit 2, Racist Social Media Posts).

16.     One particularly egregious incident occurred on September 6, 2023, when A.B. received a text message from a white student. The message included an image of a hooded KKK figure dangling a fried chicken leg in front of a Black man, along with the caption, "3

K's a day keeps the niggas away." This was just one of many offensive and racially targeted messages sent to A.B. during this period. (*See* Exhibit 1)

17.     On September 9, 2023, Adam Baylis III forwarded the racist messages sent to A.B. to the FBI's Grand Rapids office. The FBI responded the next day, acknowledging the severity of the incident but advising the family that, because minors were involved, the matter would best be handled through local authorities and the school district.

18.     Throughout September 2023 and November 2023, Dr. Nakia Baylis and Adam Baylis III held multiple informal conversations with Sidney Bailey, the Assistant Principal of Portage West Middle School, regarding the racial harassment their sons were enduring. Despite these ongoing discussions, Portage West Middle School failed to take any meaningful action to stop the harassment, instead relying on informal, inadequate responses.

19.     Rhonda Shorter is a licensed therapist who specializes in treating children of color experiencing trauma and racial stress. A.B. had been seeing Ms. Shorter for nearly two years, beginning before the 2023-2024 school year, to address the emotional distress stemming from the racial hostility he faced at school, as well as other personal traumas.

20.     Nearly two years earlier, A.B. brought a clear, plastic airsoft gun to school, intending to disassemble it for a personal hobby. The school suspended him for this incident and involved the school police officer, who considered filing criminal charges. This event severely impacted A.B.'s mental health, leading to his temporary withdrawal from school and the beginning of intensive therapy with Ms. Shorter, which continues today.

21.     By the fall of 2023, A.B. had made substantial progress through therapy, but the ongoing racial harassment at school continued to negatively impact both his mental health and academic performance.

22.     On October 16, 2023, the plaintiffs were called to the school regarding an allegation that A.B. had been involved in the harassment of a white student. The school admitted that there was no evidence to support this claim but warned that if A.B. were later found to be involved, he could face serious consequences, including expulsion. Within 48 hours, the school confirmed that A.B. was not involved in the incident.

23.     During this meeting, the plaintiffs, accompanied by Rhonda Shorter, took the opportunity to formally address their concerns about the racial harassment that A.B. and G.B. had been facing. Dr. Baylis informed the school administration, including Principal Jason Messenger, Assistant Principal Sidney Bailey, and Counselor Becky Moon, about the repeated racial slurs and derogatory comments directed at A.B., such as "nigger," "monkey," "ape," and "go pick some cotton."

24.     The administration admitted during the meeting that there were no specific policies in place to address racial harassment, as their policies primarily focused on issues such as staff misconduct, sexual harassment, and physical harm. This lack of specific policies left both A.B. and G.B., as well as other students of color, vulnerable to ongoing harassment without adequate protection or clear processes for addressing such behavior.

25.     During the same meeting, the school confirmed that a separate incident involving a student in blackface had occurred within the district, further highlighting the lack of clear policies addressing racial harassment (*See* Exhibit 3, Portage Public School Student in Blackface). The administration expressed interest in involving Dr. Baylis in policy development to address these issues. However, Dr. Baylis declined, explaining that she would refer the matter to colleagues due to her family's direct involvement in the racial issues within the school.

26. In addition to addressing A.B.'s harassment, Dr. Baylis raised concerns about the mistreatment of their other son, G.B., by Mr. Stahr, the gym teacher and basketball coach. Despite being one of the top performers at tryouts, G.B. had been unfairly targeted by Mr. Stahr, who falsely accused him of misbehavior during gym class and told G.B. that he would "remember this" during tryouts. Despite G.B.'s strong performance and being recognized by his peers as one of the best players, he was cut from the basketball team without legitimate explanation.

27. Dr. Baylis highlighted that Mr. Stahr failed to meet the school's interface requirement, which mandates that coaches engage with students and their families to provide constructive feedback for those cut from the team. Despite this expectation, Mr. Stahr made no effort to communicate with G.B. or Dr. Baylis, reinforcing the perception of bias and unfair treatment.

28. Both Mr. Messenger and Mr. Bailey acknowledged that Mr. Stahr's actions were unjust and that G.B. should have received feedback in accordance with the school's policy. However, no corrective actions were taken. This lack of accountability further contributed to G.B.'s emotional distress and feelings of exclusion.

29. On October 23, 2023, Dr. Baylis met with Mr. Messenger, Mr. Bailey, Mrs. Moon, and Ms. Shorter to discuss implementing a 504 Plan for A.B. due to his ADHD and Oppositional Defiant Disorder (ODD). Despite clear documentation of A.B.'s mental health needs and the ongoing harassment, the school denied the 504 Plan, providing subjective reasons that did not align with the formal criteria for 504 accommodations.

30. During the meeting, Dr. Baylis reiterated concerns about the ongoing harassment and the lack of clear policies. She pointed out inconsistencies in the school's disciplinary

practices, noting that a white student who brought a pocket knife to school faced no consequences, while A.B. had nearly been expelled for possessing a clear, plastic airsoft gun years earlier.

31. On October 31, 2023, while trick-or-treating, A.B. was racially harassed by his school bus driver, Defendant Bob Hayworth. Hayworth chased A.B. through the neighborhood, accusing him of taking too much candy from an unattended bucket and shouting racial slurs, including "Donkey Kong." A.B. fled, injuring his ankle in the process. This incident was recorded by one of A.B.'s peers.

32. On November 1, 2023, the Baylis family received a call from the school district's transportation department, warning that A.B. should not cause any problems on the bus that morning. When Dr. Baylis attempted to explain that Hayworth was the aggressor, the transportation department dismissed her concerns.

33. During a November 1, 2023, meeting with Mr. Messenger and Mr. Bailey, Dr. Baylis shared video evidence of the bus driver incident. Although Mr. Bailey acknowledged the severity of the incident, he admitted there was no justification for Hayworth's behavior.

34. On November 1, the Baylis family filed a police report with the Kalamazoo Township Police Department regarding the bus driver incident (Case No. 23-37306).

35. On November 2, 2023, and November 3, 2023, A.B. and G.B. were distressed to see Hayworth continuing his regular bus route through their neighborhood, despite the ongoing harassment they had endured and the school's knowledge of the incidents.

36. A.B. and G.B. have both suffered severe emotional and psychological harm due to the ongoing racial harassment. A.B. has worked closely with Ms. Shorter to address the trauma

8

caused by the racial hostility, focusing on managing anxiety, depression, and emotional regulation.

37. G.B. has also required therapeutic support to address the emotional distress caused by being targeted with racial slurs and other abusive behavior.

38. Despite Dr. Baylis's repeated attempts to resolve the harassment with the school, the administration failed to take meaningful action, ultimately forcing the family to remove A.B. and G.B. from the school and relocate, incurring significant financial and emotional burdens.

39. The ongoing harassment and the school's failure to implement effective policies and disciplinary measures have caused lasting emotional harm to A.B. and G.B., depriving them of a safe learning environment.

40. The ongoing harassment and the school's failure to implement effective policies and disciplinary measures have resulted in long-term damage to A.B. and G.B., depriving them of a safe learning environment and causing lasting emotional harm.

41. The issue of racial harassment appears embedded in the culture of the Portage Public School District. Since the removal of A.B. and G.B., the Baylis family has continued to receive calls from other Black parents in the district, seeking guidance on how to address the racism their children are also experiencing. These parents share the growing concern that the administration's failure to confront racial harassment leaves their children exposed to ongoing harm.

## CAUSE OF ACTION

### COUNT I – VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

42. Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

43. Title VI prohibits discrimination on the basis of race, color, or national origin by recipients of Federal financial assistance from the Department of Education.

44. As a recipient of Federal financial assistance from the Department, Defendant is subject to Title VI.

45. Harassment on the basis of race, color, or national origin is a form of discrimination prohibited by Title VI.

46. Racial harassment is abusive or intimidating behavior, based on race, which is sufficiently severe, persistent, or pervasive that it creates a hostile environment that interferes with an individual's ability to participate in or benefit from a recipient's program.

47. Defendant violated Title VI because it effectively caused, encouraged, accepted, tolerated, or failed to correct a hostile environment, based on race, of which it had actual or constructive notice.

48. During the 2023-2023 school year, Plaintiff A.B. was a student at Portage West Middle School.

49. During the 2023-2024 school year, Plaintiff G.B. was a student at Portage West Middle School.

50. Both Plaintiffs identify as African American.

51. During the 2023-2024 school year, A.B. and G.B. were subjected to racial slurs, including "nigger," "monkey," and "ape," and derogatory comments like "go pick some cotton," both in person and through text and social media.

52. The Baylis family repeatedly reported these incidents to Principal Messenger, Assistant Principal Bailey, and Counselor Moon, but the school failed to take meaningful action to stop the harassment.

53. On October 31, 2023, Defendant's employee, bus driver Bob Hayworth, called A.B. "Donkey Kong," a racial slur. Despite this incident being reported, no corrective action was taken.

54. As a result of Defendant's deliberate indifference, A.B. and G.B. suffered emotional distress, academic disruption, and psychological harm.

55. Plaintiffs seek compensatory and punitive damages, injunctive relief, and attorneys' fees.

## COUNT II – VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT - CREATING AND FAILING TO PREVENT A RACIALLY HOSTILE EDUCATIONAL ENVIRONMENT

56. Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

57. The Elliott-Larsen Civil Rights Act prohibits discrimination based on race, color, and national origin in educational opportunities and public services.

58. Under the Act, educational institutions like Portage Public School District are prohibited from creating or allowing a racially hostile educational environment that interferes with students' educational opportunities.

59. A.B. and G.B., being among the few Black students in a predominantly white

district, already felt isolated due to their minority status, which heightened the emotional impact of the racial harassment they endured.

60. Defendants created and perpetuated a racially hostile environment for A.B. and G.B. by failing to address the racial harassment they faced during the 2023-2024 school year at Portage West Middle School.

61. Despite being aware of racial slurs directed at A.B. and G.B., including "nigger," "monkey," and "ape," as well as derogatory comments like "go pick some cotton," Defendants failed to take adequate action to stop the harassment.

62. The hostile environment was further perpetuated when bus driver Bob Hayworth called A.B. "Donkey Kong" on October 31, 2023, without facing any disciplinary action.

63. Defendants' failure to prevent or address the ongoing harassment deprived A.B. and G.B. of an equal educational environment.

64. As a direct result, Dr. Baylis was forced to relocate her family to another school district, incurring significant financial losses, including depreciation of her home and relocation costs.

65. A.B. and G.B. suffered emotional distress, psychological harm, and disrupted educational opportunities due to Defendants' violations of the Elliott-Larsen Civil Rights Act.

66. Plaintiffs seek compensatory damages for emotional, psychological, and financial harm, punitive damages, injunctive relief, and attorneys' fees.

### COUNT III – VIOLATION OF 42 U.S.C. § 1983 - EQUAL PROTECTION CLAUSE

67. Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

68. 42 U.S.C. § 1983 provides a civil remedy for individuals whose constitutional rights

12

have been violated by persons acting under color of state law. The Equal Protection Clause of the Fourteenth Amendment guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

69.     Defendants, acting under color of state law as employees and agents of the Portage Public School District, deprived A.B. and G.B. of their right to equal protection under the law by allowing, condoning, and failing to address the racial harassment and discrimination they experienced.

70.     The deliberate indifference exhibited by Defendants towards the racial harassment of A.B. and G.B. constitutes a violation of their constitutional rights under the Equal Protection Clause.

71.     Plaintiffs seek relief in the form of compensatory damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

72.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

73.     To establish a claim for intentional infliction of emotional distress (IIED) under Michigan law, Plaintiffs must demonstrate that: (1) Defendants' conduct was extreme and outrageous, (2) Defendants acted with intent or recklessness, (3) the conduct caused Plaintiffs' emotional distress, and (4) the distress was severe.

74.     Defendants' conduct, including but not limited to ignoring reports of racial harassment, failing to protect A.B. and G.B. from ongoing racial abuse, and allowing a bus driver to threaten and racially slur A.B., was extreme and outrageous. Such conduct exceeds all bounds of decency and is intolerable in a civilized community.

75. Defendants acted with reckless disregard for the emotional well-being of A.B. and G.B., knowing that their failure to act would likely result in severe emotional distress for the children.

76. As a direct and proximate result of Defendants' conduct, A.B. and G.B. have suffered severe emotional distress, including but not limited to anxiety, depression, fear, and psychological trauma, requiring ongoing therapeutic intervention.

77. Plaintiffs seek relief in the form of compensatory damages for the severe emotional distress suffered by A.B. and G.B., as well as punitive damages to deter similar conduct in the future.

## COUNT V – NEGLIGENCE

78. Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

79. To establish a claim for negligence under Michigan law, Plaintiffs must demonstrate that: (1) Defendants owed a duty of care to Plaintiffs, (2) Defendants breached that duty, (3) the breach was the proximate cause of Plaintiffs' injuries, and (4) Plaintiffs suffered damages.

80. Defendants owed a duty of care to A.B. and G.B. to provide a safe educational environment free from harassment and discrimination.

81. Defendants breached this duty by failing to take appropriate measures to protect A.B. and G.B. from racial harassment, failing to properly investigate reports of harassment, and failing to discipline those responsible for the harassment.

82. As a direct and proximate result of Defendants' breach of their duty, A.B. and G.B. have suffered harm, including emotional distress, psychological trauma, and loss of

14

educational opportunities.

83. Plaintiffs seek relief in the form of compensatory damages, punitive damages, and attorneys' fees and costs.

## COUNT VI – FAILURE TO TRAIN AND SUPERVISE

84. Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

85. Defendants Portage Public School District, Jason Messenger, Sidney Bailey, and Becky Moon, in their official capacities, had a duty to properly train and supervise school staff and employees to prevent racial harassment, discrimination, and violations of students' civil rights.

86. Defendants failed to adequately train and supervise school staff, including the bus driver, resulting in the racial harassment and discrimination experienced by A.B. and G.B.

87. The failure to train and supervise constituted deliberate indifference to the rights of A.B. and G.B., resulting in violations of their constitutional and statutory rights.

88. Plaintiffs seek relief in the form of compensatory damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## COUNT VII – VIOLATION OF DUE PROCESS - LACK OF PROCEDURAL SAFEGUARDS FOR VICTIMS OF RACIAL DISCRIMINATION

89. Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

90. The Due Process Clause of the Fourteenth Amendment guarantees that no person shall be deprived of life, liberty, or property without due process of law.

91. Defendants, acting under color of state law, deprived A.B. and G.B. of their due process rights by failing to provide a procedure or mechanism for victims of racial harassment and discrimination to seek redress or protection within the school district.

92. The Portage Public School District does not have adequate policies, procedures, or practices in place to protect students like A.B. and G.B. from racial harassment, nor does it provide a clear process for addressing complaints of racial discrimination.

93. As a result of the lack of procedural safeguards, A.B. and G.B. were left without an effective remedy to address the racial harassment they endured, further exacerbating the harm they suffered.

94. The failure to provide due process in addressing and remedying racial harassment within the school district violated A.B. and G.B.'s constitutional rights.

95. Plaintiffs seek relief in the form of compensatory damages, injunctive relief to establish proper procedures and safeguards within the school district, and attorneys' fees and costs.

## DAMAGES

96. The preceding paragraphs are incorporated by reference.

97. The acts and omissions of Defendants constituted a violation of Plaintiffs' constitutional, statutory and common law rights were and are a direct and proximate cause of Plaintiffs' damages.

98. As a result of Defendants' acts and omissions, Plaintiffs have suffered emotional and physical injuries all of which are ongoing, and resuling in damages including, but not limited to:

      a. Emotional distress;

      b. Loss of personal freedom and liberty;

      c. Pain and suffering;

      d. Exemplary damages;

      e. An award of punitive damages;

      f. Reasonable attorney fees and costs;

      g. All other such relief which appears reasonable and just under the circumstances.

WHEREFORE, Plaintiffs, Nakia S. Baylis, Adam Baylis III, A.B., and G.B. pray that this Honorable Court grant judgment in favor of Plaintiffs and against Defendants in whatever amount Plaintiffs are found to be entitled, together with interests, costs, and attorney fees.

Respectfully Submitted,

TAYLOR LAW FIRM, PLLC

BY: /s/ Alexandria J. Taylor
ALEXANDRIA J. TAYLOR P75271
Attorney for Plaintiffs

Dated: December 12, 2024