UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DR. NAKIA S. BAYLIS, individually and
as parent and legal guardian of her minor
children, A.B. and G.B., ADAM BAYLIS III,
individual and as parent and natural guardian
of his minor children, A.B. and G.B,

               Plaintiffs,

v.

PORTAGE PUBLIC SCHOOL DISTRICT,
JASON MESSENGER, SIDNEY BAILEY,
BECKY MOON and BOB HAYWORTH,

               Defendants.

CASE NO:  1:24-CV-01304

Hon. Robert J. Jonker

---

| | |
|---|---|
| ALEXANDRIA J. TAYLOR (P75271) | Mark T. Ostrowski  (P49761) |
| TAYLOR LAW FIRM, PLLC | Jessica M. Stark-Flechsig  (P80647) |
| Attorney for Plaintiffs | Kyle J. Zielinski  (P83962) |
| 19 Clifford Street, Fl 8 | KLUCZYNSKI, GIRTZ & VOGELZANG |
| Detroit, MI 48226 | Attorneys for Defendants |
| Ph: (313) 960-4339 | 3033 Orchard Vista Dr. SE, Suite 308 |
| Fx: (313) 422-0934 | Grand Rapids, MI  49546 |
| ataylor@taylawfirm.com | (616) 559-8649 |
| | Email:  marko@kgvlaw.com |
| | Email:  jesstark@kgvlaw.com |
| | Email: kzielinski@kgvlaw.com |

---

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Date: March 13, 2026

KLUCZYNSKI, GIRTZ & VOGELZANG
Kyle J. Zielinski (P83962)
Mark T. Ostrowski (P49761)
Attorneys for Defendants

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ...................................................................................... iii

I.      INTRODUCTION AND STATEMENT OF FACTS. .................................... 1

II.     PLAINTIFFS' CLAIMS OF DISPARATE TREATMENT ARE LIKEWISE
        UNSUPPORTED BY ADMISSIBLE EVIDENCE. ....................................... 7

III.    STANDARD OF REVIEW .......................................................................... 8

IV.     PLAINTIFFS' TITLE VI CLAIM SHOULD BE DISMISSED ................... 9

   A.   The District had Actual Knowledge of only four complaints of racial harassment. ........... 11

   B.   The Harassment to which the District had Actual Knowledge was not Actionable Racial
        Harassment ............................................................................................... 13

   C.   The District was not deliberately indifferent to the Student-on-Student harassment. ...... 16

   D.   The District was not deliberately indifferent to the Employee-on-Student harassment. .. 22

   E.   Plaintiffs have not pled and there is no evidence showing subsequent actionable
        Employee-On-Student harassment ............................................................ 23

V.      PLAINTIFFS' EQUAL PROTECTION CLAUSE CLAIM SHOULD BE
        DISMISSED…........................................................................................... 23

   A.   Plaintiff has offered no evidence of Disparate Treatment ................................ 24

   B.   Plaintiffs Cannot Establish Deliberate Indifference by Defendants ................ 25

   C.   The Individual Defendants are protected by Qualified Immunity .................... 27

VI.     PLAINTIFFS' FAILURE TO TRAIN AND SUPERVISE CLAIM SHOULD BE
        DISMISSED ............................................................................................... 28

VII.    PLAINTIFFS' CLAIM FOR VIOLATION OF DUE PROCESS SHOULD BE
        DISMISSED ............................................................................................... 31

CONCLUSION ............................................................................................... 33

## INDEX OF AUTHORITIES

**Cases**

*Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ........................................................ 25

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ............................................................ 9

*Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) ........................................ 32

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999) ...................................................................................................... passim

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ........................................................................................................................ 31

*DiStiso v. Cook,* 691 F.3d 226, 241 (2d Cir.2012) ........................................................................ 25

*Dixon v. Univ. of Toledo*, 702 F.3d 269, 279 (6th Cir.2012) ........................................................ 24

*Doe v. Baum*, 903 F.3d 575, 580 (6th Cir. 2018) .......................................................................... 17

*Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996) ...................................................................................................................................... 28

*Doe v. Jackson Local Sch. Bd. of Educ.*, 954 F.3d 925, 934 (6th Cir. 2020) ................................ 32

*Doe v. Plymouth-Canton Cmty. Schs.*, No. 19-10166, 2022 WL 1913074, at *10 (E.D. Mich. June 3, 2022) ............................................................................................................................................ 22

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) ......... 29

*Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998) .......................... 24

*Foster v. Bd. of Regents of Univ. of Michigan*, 982 F.3d 960 (6th Cir. 2020) ........................ 17, 18

*Gant ex rel. Gant v. Wallingford Bd. of Educ.,* 195 F.3d 134, 139–40 (2d Cir.1999) .................. 27

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) 10, 11, 16

*Gordon v. Traverse City Area Pub. Schs.,* 686 F. App'x 315 (6th Cir. 2017)................................. 19

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)...................... 27

*Harris v. City of Saginaw,* 62 F.4th 1028, 1038 (6th Cir. 2023) ................................................. 29

*Hill v. Cundiff,* 797 F.3d 948, 971 (11th Cir. 2015) ........................................................11

*Humphrey v. Mabry,* 482 F.3d 840, 846 (6th Cir.2007) ............................................................. 27

*InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989) ................................................ 9

*Jones v. Muskegon Cnty.,* 625 F.3d 935, 940 (6th Cir. 2010)......................................................... 9

*Jones v. Reynolds,* 438 F.3d 685, 690 (6th Cir. 2006)............................................................. 32

*Kallstrom v. City of Columbus,* 136 F.3d 1055, 1066 (6th Cir. 1998)........................................... 32

*Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)...................... 28

*Kollaritsch v. Michigan State Univ. Bd. of Trs.,* 944 F.3d 613 (6th Cir. 2019)........... 12, 13, 17, 23

*M.J. ex rel. S.J. v. Akron City Sch. Dist. Bd. of Educ.,* 1 F.4th 436, 453 (6th Cir. 2021) ............... 9

*Malick v. Croswell-Lexington Dist. Sch.,* 717 F. Supp. 3d 639, 653 (E.D. Mich. 2024), aff'd, 148

    F.4th 855 (6th Cir. 2025)...........................................................................................11

*Malick v. Croswell-Lexington District Schools,* 148 F.4th 855, 862 (6th Cir. 2025)........ 10, 20, 21

*Massey v. Akron City Bd. of Ed.,* 82 F.Supp.2d 735, 744 (N.D.Ohio 2000) ..................................11

*Mathis v. Wayne Cnty. Bd. of Educ.,* 782 F. Supp. 2d 542, 549 (M.D. Tenn. 2011) ..................... 17

*McLean v. 988011 Ont., Ltd.,* 224 F.3d 797, 800 (6th Cir. 2000) ................................................... 8

*McLemore v. Gumucio,* 619 F. Supp. 3d 816, 823 (M.D. Tenn. 2021) ........................................... 9

*McQueen v. Beecher Cmty. Schs.,* 433 F.3d 460, 469 (6th Cir. 2006) ......................................... 32

*Monell v. Dep't Soc. Servs. of City of New York,* 436 U.S. 658, 694-95, 98 S.Ct. 2018 (1978) ... 29

*Mosier v. Evans,* 90 F.4th 541, 550 (6th Cir. 2024) ..................................................................... 29

*Pahssen v. Merrill Cmty. Sch. Dist.,* 668 F.3d 356 (6th Cir. 2012).............................................. 12

iv

*Patterson v. Hudson Area Schools*, 551 F.3d 438 (6th Cir. 2009) ................................................ 22

*Pearson v. Callahan,* 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ..................... 27

*Pineda v. Hamilton Cnty.*, 977 F.3d 483, 491 (6th Cir. 2020) ...................................................... 26

*Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) ..................................................................... 9

*Roell v. Hamilton Cnty.*, 870 F.3d 471, 487 (6th Cir. 2017) ......................................................... 29

*Rosa H. v. San Elizario Indep. Sch. Dist.,* 106 F.3d 648, 660 (5th Cir. 1997) .............................. 11

*Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1291 (10th Cir. 2017) ...................................................... 11

*Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ............................ 27

*Shively v. Green Local Sch. Dist. Bd. of Educ.,* 579 Fed.Appx. 348, 356–57 (6th Cir.2014) 24, 26

*Soper v. Hoben,* 195 F.3d 845, 852 (6th Cir.1999) ................................................................... 23, 24

*Stiles ex rel. D.S. v. Grainger County*, 819 F.3d 834 (6th Cir. 2016) .......................... 18, 21, 24, 33

*Thomas v. Chatanooga*, 398 F.3d 426, 429 (6th Cir. 2009) .......................................................... 29

*Vance v. Spencer County Public School District*, 231 F.3d 253 (6th Cir. 2000) ..................... 22, 26

*Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) ............................................................................... 25

*Williams ex rel. Hart v. Paint Valley Local Sch. Dist.,* 400 F.3d 360, 369 (6th Cir.2005) ........... 26

*Williams v. Port Huron Sch. Dist., 455 F. App'x 612, 618 (6th Cir. 2012)* ................................... 25

**Statutes**

42 U.S.C. § 2000d ....................................................................................................................... 9, 10

U.S. Const. amend. XIV, § 1 ......................................................................................................... 31

**Rules**

Fed. R. Civ. P. 56(c)(1) ................................................................................................................... 9

Rule 56(a) of the Federal Rules of Civil Procedure ........................................................................ 8

## I.    INTRODUCTION AND STATEMENT OF FACTS.

Plaintiff Dr. Nakia Baylis is the stepmother to A.B. and G.B., currently 16 and 14 years of age.  Plaintiff, Adam Baylis III, is their father. The boys currently attend Plainwell High School. Their Complaint alleges that Portage Public Schools (the "District"), Principal Messenger, Assistant Principal Bailey and Counselor Moon should be held liable for alleged racial harassment transmitted primarily via social media by students during the short time that the boys attended Portage West Middle School ("Portage").  There is no legal or factual basis supporting their claims.  This Court previously dismissed the state law claims without prejudice.  Based on the undisputed facts of this case, Plaintiffs' remaining claims should be dismissed with prejudice.

A.B. attended Portage for portions of his 6th, 7th, and 8th grade years.  His 6th grade academic year began in late August of 2021 and would have been completed in June of 2022. However, he was expelled for possessing an airsoft pellet gun at school on March 10, 2022, which is a violation of school policy and state law.  Not only was he in possession of the airsoft pellet gun, but he bragged to other students about having the gun at school.  He completed his 6th grade year by taking online courses.  Neither his parents nor A.B. contested the expulsion.  His stepmother testified that she agreed with the school's discipline regarding that matter.  (Exhibit A, Dep. of Dr. Baylis at pp. 60-67)

A.B. returned to Portage for 7th grade in late August of 2022, but was withdrawn after the first semester when his stepmother reported via email to Assistant Principal Bailey that he physically attacked his father and was being sent to live with his grandfather. (Exhibit B, 12/19/2022 email from Dr. Baylis to Mr. Bailey).  A.B. was also disciplined in September of 2022 for being involved in a fist fight with another student at school. (Exhibit A, at p. 150 and Exhibit C, A.B. Discipline Record). While living with his grandfather, A.B. again engaged in

violence by throwing items at his grandfather.  (Exhibit D, Dep of A.B. at p. 95).  He received intensive counseling on an outpatient basis at a Pine Rest facility from March 29 to April 6, 2023.  He then received therapy from a Nurse Practitioner at Synergy Health from March through October of 2023. (Exhibit A, at pp. 52-53.) During the time he lived with his grandfather, he attended Kalamazoo Public Schools at Linden Grove Middle School.  While attending Kalamazoo Public Schools his behavior did not improve.  This is true for both his attendance at Linden Grove Middle School during the spring of 2023 and after he left Portage and attended Loy Norrix High School for the 2024-2025 school year. (*see*, Exhibit D, at pp. 27-65).

A.B. returned to Portage for the beginning of 8th grade, attending from late August of 2023 until November 1st of 2023, when his parents withdrew both him and his brother from the District.  There were four complaints of racially offensive incidents reported to school employees between September 6th and November 1, 2023.   The school responded appropriately to the complaints made prior to Plaintiffs' decision to remove the boys from the district.

On September 5, 2023, a fellow student (B.T.), and friend of A.B.'s, sent threatening texts to a female student, K.C., a former girlfriend of A.B., including a statement in Arabic stating he was going to bomb her house. (Exhibit D, at pp 32, 81 and Exhibit E, B.T. Text Messages to K.C.).  B.T. told K.C. that it was A.B. sending the texts.  After the female student complained to administration, an investigation quickly determined that student B.T. not A.B., was the source of the threatening text.   On September 6, 2023, Student B.T. then sent racially offensive text messages to A.B., including reference and pictures of KKK members and use of the N-Word, apparently motivated by anger with A.B. for identifying him as the perpetrator of the texts sent to the female student.  Plaintiffs complained to the school about the offensive text message that

same day. (Exhibit F, 9/6/23 Email from Adam Baylis to Mr. Bailey). The offender B.T. was suspended from school for five days on September 7, 2023.  He was also required to complete a racial sensitivity assignment.  (Exhibit G, B.T. Discipline Report, Exhibit H, Bailey Affidavit and Exhibit I, Messenger Affidavit).  There were no reports of any subsequent harassment by B.T.

The second racially offensive incident was reported to Assistant Principal Bailey on October 11, 2023.  This incident involved a social media post circulating among students showing a young white girl in black face stating "I made myself a N-----".  (Exhibit J, 10/11/23 Email from Dr. Baylis to Mr. Bailey). The message was not sent directly to Plaintiff's sons but was forwarded to them by friends who discovered it.  (Exhibit K, Dep. of G.B. at pp. 35-36). Assistant Principal Bailey and Principal Messenger began investigating that same day.  They were unable to identify the girl depicted.  They determined she was not a student at their school. They reached out to the two other middle schools in the district, and it was reported that no one could identify the girl depicted in the post.  It was determined that the girl most likely attended Kalamazoo Public Schools.  (*see* Exhibits H and I).

A third complaint was made by the Plaintiffs to Portage West Middle School on October 12, 2023.  Mr. Baylis sent an email to Mr.  Bailey on October 12, 2023, with a list of five white male students who allegedly made racist comments to A.B. during their 8th grade English Language Arts class. (Exhibit L, 10/12/23 Email from Adam Baylis to Mr. Bailey).  Mr. Bailey questioned the five students.  Four of the students denied making any derogatory comments. One of the students admitted saying to A.B. that he dressed like a pedophile based on his habit of wearing a black trench coat in the class. (Exhibit H). A.B. testified that the students making the comments were careful not to do so when the teacher was nearby and there were no recordings which would have captured things said in the classroom.  (Exhibit D, at p. 132).  A.B. did not

report the alleged comments initially because he could not prove what had been said.  (Id.)  A.B. testified that after the list of student names was provided to Mr. Bailey, the students identified told him they had been spoken to and were required to participate in sensitivity training.  As Mr. Bailey and Ms. Moon state in their affidavits, the students were warned that such conduct would not be tolerated. (Exhibit H and Exhibit M, Moon Affidavit).  A.B. testified that the situation improved significantly and there were only a couple of later comments.   There were no subsequent complaints made about the comments after the students were spoken to by Mr. Bailey after the students were identified on October 12, 2023.  (Exhibit D, at pp 129-133).

The fourth and final complaint of racially offensive conduct during the fall of 2023, involved an interaction on Halloween night between A.B. and his bus driver, Defendant Haworth, who happens to live in the same neighborhood as the Baylis family.  As stated in his affidavit, Defendant Haworth and his wife were taking their daughter trick or treating when A.B. was observed riding his bike up to a home where he dumped an entire bowl of candy into his backpack before running back to his bicycle.  Defendant Haworth expressed his objection telling A.B. that he should not be taking all the candy.   To which Adam replied, "mind your own business or I will kick you're a--."  He also told Haworth to suck his d---.  (Exhibit N, Haworth Affidavit). Haworth responded by stating "Hey Donkey Kong do you want to go".

A.B. admits taking all candy from bowls put out by homeowners for trick or treating and to telling Haworth to "suck his d---." (Exhibit D, at p. 167) Mr. Haworth states in his affidavit that his use of the phrase "Donkey Kong" was not intended as a racial slur but rather was an attempt to repeat a trademark phrase from a video game "It's on like Donkey Kong." (Exhibit N).

There is also a video and audio recording made by A.B's friend on the night of Halloween which shows Adam riding his bicycle up and down the street, toward and away from

Mr. Haworth.  Adam is seen taunting Mr. Haworth making statements like "why don't you go home and beat your kids" and "help police he is trying to rape me." (Exhibit O, 10/31/23 Video). It is clear that Adam is enjoying the interaction with Mr. Haworth and attempting to provoke a response.

After the four incidents described from September 6, 2023, to October 31, 2023, Plaintiffs decided to remove their sons from Portage Public School and did so on November 1, 2023.  (Exhibit A, at p. 28). The only other evidence of specific complaints being made regarding racial harassment is G.B.'s testimony that white male students made a handful of racially offensive comments to him during his English Language Arts class taught by Ms. Howe during the 2022-2023 school year.  G.B. recalls that most of the time when he complained, Ms. Howe responded by admonishing the students and or bringing in the Counselor Ms. Moon to address the situation.  He thought there were other classes where he complained but could not recall which class, the name of the teacher or whether anything was done to address the issue or not. (Exhibit K, Dep. of G.B. at pp. 81-90) Ms. Howe does not recall G.B. ever making such complaints to her and recalls him as a well-liked student who enjoyed making his classmates laugh.  (Exhibit P, Howe Affidavit).

In their Complaint, Plaintiffs also attached a copy of a social media post showing a person wearing a monkey costume and stating, "Why is G** on Amazon".  No complaints were made to school staff regarding this image.  Defendants do not recall seeing the image prior to the filing of the Complaint and unlike the other two racially offensive images there is no email from the Plaintiffs forwarding it to the school. (Exhibits H, I, and M).

Plaintiffs and A.B. admit that no complaints were made to the school district regarding alleged racial harassment before September 6, 2023. (Exhibit A, at pp. 139-140 and 191, Exhibit

D, at pp. 125-133, 152-153, 171)  Dr. Baylis testified that A.B. exhibited significant anger issues and engaged in significant misconduct at Portage.  He was diagnosed with Oppositional Defiance Disorder and ADHD after participating in intensive psychological therapy at Pine Rest during March of 2023 and follow up biweekly therapy through mid-October of 2023. (See, Exhibit A, pp. 39-40, 50-56).  She claims that A.B.s behavioral and anger issues stemmed from a combination of factors including adolescent hormonal changes, insecurity regarding his sexuality and resentment caused by racist comments and attitudes.  (*Id.* at pp. 186-191).

Dr. Baylis testified that it was not until A.B. underwent extensive therapy in the Spring of 2023 and prior to his return to Portage that she and her husband understood that Adam's issues were caused in part by exposure to racism.  She admits that no complaints were made to the school regarding alleged racial harassment until September of 2023.  Prior to that time, no one associated Adam's behavioral issues and anger with exposure to racism purportedly occurring at school.  She claims it was only after Adam's therapy that he was able to verbalize the alleged connection between his anger and behavioral issues and harassment.  (*Id.* at pp. 139, 186-189 and 191).

This Court should dismiss all of Plaintiff's remaining federal claims in this case based on: (1) the lack of evidence showing severe and pervasive racial harassment occurring at the school; (2) the undisputed evidence showing Defendants responded reasonably to the alleged harassment of which they had notice, and; (3) the absence of evidence showing that the alleged perpetrators engage in subsequent harassment after the school had notice.  Finally, Plaintiffs have not produced evidence showing that the Defendants were deliberately indifferent to their complaints.

## II.    PLAINTIFFS' CLAIMS OF DISPARATE TREATMENT ARE LIKEWISE UNSUPPORTED BY ADMISSIBLE EVIDENCE.

In addition to alleged racial harassment, Plaintiffs claim that their sons suffered disparate treatment.  First, they claim that A.B. was treated more harshly for possessing the air soft pellet gun than a white male student who possessed a knife at school.  However, the two situations are not comparable.

As Principal Messenger states in his affidavit, a white male student came to his office in the morning during October of 2023, prior to classes starting and explained he entered the school with the knife which he forgot was in his coat pocket from bow hunting over the weekend.  Mr. Messenger took possession of the knife which was a folding "jack knife" with a blade less than 3" in length.  He returned the knife to the boy's grandmother a week or two later.  Mr. Baylis and A.B. happened to be in the central office when Mr. Messenger returned the knife to the boy's grandmother. (Exhibit I). Neither Plaintiffs nor their sons were present when the white student surrendered the knife.   Nor have they identified any evidence to dispute Mr. Messenger's description of the exchange.

Unlike, A.B., the student with the folding knife came to the office of his own accord, prior to classes starting and voluntarily gave the knife to Mr. Messenger.  A.B. on the other hand possessed the air soft gun for several hours, bragged to other students about having a gun, and gave up possession only after being questioned by school staff. (Exhibit H)

Plaintiffs also claim that G.B. was discriminated against based on his race when he did not make the 7th grade basketball team after trying out in October of 2023.  Mr. Stahr the head coach for the Middle School Boys Basketball team, and a physical education teacher who had G.B. as a student has provided an affidavit stating that G.B. did not make the team due to the fact he repeatedly engaged in disruptive behavior during class and because his basketball skills were

inferior to the other boys who tried out for the teams. (Exhibit Q, Stahr Affidavit). A total of 21 boys who tried out for the two teams (A and B squads, each with 11 available slots) did not make the teams.  There were several African American and Eastern Indian players who made the teams and the majority of the boys cut after tryouts were white. *Id.* Finally, the legitimacy of Mr. Stahr's decision was confirmed this school year when G.B. was on the freshman team at his current school, Plainwell High School but quit the team after only four games because he could not earn playing time.  Plainwell High School is a small school and the coach of the freshman team is also African American.  (*see*, Exhibit K, at pp. 28-29 and Exhibit R, Dep of Adam Baylis III at pp. 12-13).

Plaintiff Dr. Nakia Baylis also claims she was told by Principal Messenger that the school did not have a policy addressing racial harassment.  Her claim is not true.  Attached as Exhibit S are several policies which prohibit harassment including that based on race.  Most likely Dr. Baylis misunderstood statements from Principal Messenger stating that he was interested in developing a proactive program to educate students on the importance of being more considerate and sensitive to one another's feelings and diminishing the instances of student on student harassment in addition to the reactive approach of student discipline.  In fact, the school did develop such a program known as the "Risky Word Presentation".  (Exhibit T).

**III.    STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ont., Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has

the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party can satisfy this burden by presenting affirmative evidence that negates an element of the nonmoving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

To successfully oppose a motion for summary judgment, "[t]he non-moving party ... must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A party opposing a Rule 56 motion has the duty to affirmatively present and point out *specific evidence in the record* sufficient to justify a jury decision in her favor. *See* Fed. R. Civ. P. 56(c)(1); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989); *Anderson*, 477 U.S. at 256. The nonmoving party cannot simply rely on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. And merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248; *accord McLemore v. Gumucio*, 619 F. Supp. 3d 816, 823 (M.D. Tenn. 2021).

## IV.    PLAINTIFFS' TITLE VI CLAIM SHOULD BE DISMISSED

Title VI prohibits any program or activity receiving Federal financial assistance from discriminating against any person on the grounds of race, color, or national origin. 42 U.S.C. § 2000d. However, Title VI "proscribes only intentional discrimination.". *M.J. ex rel. S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 453 (6th Cir. 2021).

In *Malick v. Croswell-Lexington District Schools*, 148 F.4th 855, 862 (6th Cir. 2025) the Six Circuit Court of Appeals recently confirmed that if deliberate indifference claims based on student-on-student racial harassment are cognizable under Title VI, the *Davis* analysis for sexual harassment claims under Title IX would apply.[1] In line with *Davis*, Plaintiffs must therefore show two things: that they suffered "actionable" racial harassment and that their school responded to their complaints with "deliberate indifference." *Malick v. Croswell-Lexington Dist. Schs.,* 148 F.4th 855, 862 (6th Cir. 2025).

That is consistent with the Supreme Court's observation that "Title VI of the Civil Rights Act of 1964, ... is parallel to Title IX except that it prohibits race discrimination, not sex discrimination, and applies in all programs receiving federal funds, not only in education programs," and that "[t]he two statutes operate in the same manner, conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (citing 42 U.S.C. § 2000d *et seq.*).

Therefore, to bring a student-on-student racial harassment case to trial under Title VI, a plaintiff must produce evidence of: (1) an incident of actionable racial harassment, (2) the school's actual knowledge of it through an appropriate school official, (3) some further incident of actionable racial harassment, (4) that the further actionable harassment would not have happened but for the objective unreasonableness (deliberate indifference) of the school's response, and (5) that the Title VI injury is attributable to the post-actual-knowledge further

---

[1] Neither the Sixth Circuit nor any Supreme Court has specifically held that Title VI authorizes a *Davis*-type claim based on racial as opposed to sexual harassment, every Circuit to consider it agrees that it does, and in *Malick* the Sixth Circuit assumed without deciding that deliberate indifference claims are cognizable for racial discrimination under Title VI. *See Malick v. Croswell-Lexington Dist. Schs.,* 148 F.4th 855, 862 (6th Cir. 2025)

harassment. *Malick v. Croswell-Lexington Dist. Sch.,* 717 F. Supp. 3d 639, 653 (E.D. Mich. 2024), aff'd, 148 F.4th 855 (6th Cir. 2025). Here, Plaintiffs' claims fail at each step of the way.

### A. The District had Actual Knowledge of only four complaints of racial harassment.

To establish liability under Title VI a plaintiff must demonstrate that an appropriate school official had actual notice of specific discriminatory harassment and responded with deliberate indifference. Actual notice requires that an appropriate person be aware of the harassment, or facts that indicate the likelihood of discrimination. *Massey v. Akron City Bd. of Ed.,* 82 F.Supp.2d 735, 744 (N.D.Ohio 2000). The Supreme Court has defined an "appropriate person" as "an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S. Ct. 1989 (1998). Further, an appropriate person must have been entrusted with the school's "disciplinary authority" over students. *See, Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 647, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999).

Notably, the Eleventh Circuit has found a teacher's aide is not an appropriate person capable of imputing knowledge to a school District. *Hill v. Cundiff*, 797 F.3d 948, 971 (11th Cir. 2015).  In fact, in the high school context no Court of Appeals has found sufficient authority below the level of a building principal. Courts have also found that campus security officers were not appropriate persons for Title IX purposes, because a contrary holding "would entail the sort of vicarious liability that the Supreme Court tried to avoid in *Gebser*." *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1291 (10th Cir. 2017). The Title IX inquiry focuses on those individuals who are appointed to monitor the conduct of others and can, "as distinguished from reporting to others, remedy the wrongdoing themselves." *Rosa H. v. San Elizario Indep. Sch. Dist.,* 106 F.3d 648, 660 (5th Cir. 1997).

Equally important, the Sixth Circuit has emphasized that the actual-notice requirement is **incident-specific**. Liability only arises when a responsible official had actual knowledge of harassment that "prompted or should have prompted a response." *Kollaritsch v. Michigan State Univ. Bd. of Trs.,* 944 F.3d 613, 621 (6th Cir. 2019) (quoting *Davis*, 526 U.S. at 650, 119 S.Ct. 1661). The deliberate indifference framework therefore requires that school officials be aware of specific acts of harassment directed at the Plaintiff's children, not merely that harassment occurred somewhere within the school environment. A Title VI claimant cannot satisfy this requirement by relying on misconduct directed at other students or by referencing generalized allegations of harassment. *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012).

For this reason, in the present case the Court's deliberate indifference analysis must be confined to the limited set of four incidents which were reported by Plaintiffs to District administrators and to which the administrators therefore had actual notice of. As discussed above, the incidents for which Defendant's administrators had actual knowledge of are (1) the September 6, 2023 text message sent by student B.T. to A.B.; (2) an October 11, 2023 report of a racially offensive social media post depicting a girl in blackface; (3) an October 12, 2023 complaint that several students made racially derogatory comments toward A.B. during his English class; and (4) a verbal exchange between A.B. and Defendant Haworth that occurred during Halloween Trick-or-Treating on October 31, 2023.

Defendants did not have actual notice of the image of a monkey costume for sale on Amazon.com. (ECF No. 1-2). The image was never previously shared with the District by Plaintiffs, and the District was likewise not aware the image existed prior to its inclusion in Plaintiffs' Complaint. Unlike the other images in this matter, there is no evidence of any emails or other written communication sharing or referencing the image and neither Plaintiffs nor A.B.

could recall specifically when the image was allegedly shared with the District. (Exhibit D, at pp. 155-158, Exhibit A, at pp. 94-97, and Exhibit R, at p. 81).

**B. The Harassment to which the District had Actual Knowledge was not Actionable Racial Harassment**

The Sixth Circuit has conservatively described harassment, without additional qualification, as some type of aggressive and antagonistic behavior that, from the victim's perspective, is uninvited, unwanted, and non-consensual." *Kollaritsch v. Michigan State Univ. Bd. of Trs.,* 944 F.3d 613, 620 (6th Cir. 2019). "For student-on-student sexual harassment to be actionable under *Davis*'s Title IX private-cause-of-action formulation, it must be (a) severe, (b) pervasive, and (c) objectively offensive." *Ibid.* (citing *Davis*, 526 U.S. at 651, 119 S.Ct. 1661).

"Severe" means something more than just juvenile behavior among students, even behavior that is antagonistic, non-consensual, and crass. The *Davis* Court made an explicit admonishment that "simple acts of teasing and name-calling" are not enough. *Davis*, 526 U.S. at 651, 119 S.Ct. 1661; 652. "Pervasive" means "systemic" or "widespread," *Id.* at 652-53, 119 S.Ct. 1661, but for our purposes, it also means *multiple* incidents of harassment; one incident of harassment is not enough. *Id.* "Objectively offensive" means behavior that would be offensive to a reasonable person under the circumstances, not merely offensive to the victim, personally or subjectively. *Id.* at 651, 119 S.Ct. 1661. Whether conduct rises to the level of actionable harassment depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved. *Id.*

Here, the alleged harassment of which the District had actual knowledge does not rise to the level of actionable racial harassment under Title VI. Notably, much of the alleged behavior was not entirely non-consensual. The record shows that A.B. and G.B. participated in some of

the same name-calling and teasing directed at them by peers. A.B. admits that he regularly used the "N" word when referring to other black men (Exhibit D, at p. 67) and that he has called other students "Monkey(s)" (*Id.* at pp. 128-129). A.B. was also involved in bullying his brother, G.B., and even encouraged friends to continue teasing and calling G.B. names after he was no longer attending school in the District during his 8th grade year. (*Id.* at pp. 89-90).

More importantly, the alleged conduct was not pervasive. Plaintiffs identify only three specific incidents of alleged racial harassment that were reported to District administrators. Of those incidents, only one involved racially offensive conduct by a fellow student of the District directed at A.B. The September 6, 2023, text message sent by B.T. containing racially offensive images and language. The record indicates it was an isolated act of retaliation arising from A.B. identifying B.T. as the perpetrator of the texts sent to the female student. This was the only instance in which racially offensive images or language were sent directly to a member of the Baylis family in written form. A single retaliatory message of this nature between friends does not demonstrate the systemic, continuous, or widespread harassment necessary to establish pervasiveness under Title VI.

The remaining two specific incidents that were reported to the District were not student-on-student harassment that occurred within the District and therefore cannot be evidence of pervasive harassment at the District. The social media image depicting a young white girl in blackface accompanied by a racial slur, did not depict a student of the District and was not created by any of the District's students. Further, the image was not directed at A.B. or G.B., it was forwarded to G.B. by friends who had encountered it online. (Exhibit D, at pp. 151-152 and Exhibit K, at pp. 35-36). Although the content may be offensive, the fact that Plaintiffs' sons learned of the image through friends does not constitute harassment directed toward them or

14

demonstrate pervasive racial harassment within the District. Notably, this was the only incident of this nature reported to the District by Plaintiffs during the time Plaintiffs' children remained enrolled.

The interaction between A.B. and Defendant Haworth occurred off school property during Halloween trick-or-treating. This is the only alleged incident of harassment involving a District employee, and it occurred during a private neighborhood interaction that was neither sponsored nor controlled by the District. Further, Haworth disputes that the comment was intended to be racial. (Exhibit N, Affidavit of Haworth). Even assuming arguendo that the remark could be interpreted as racially insensitive, a single isolated comment made off campus cannot establish the type of severe and pervasive harassment required to impose liability under Title VI.

Viewed together, these specific incidents are isolated and unrelated events that fall well short of demonstrating the kind of severe, pervasive, and objectively offensive harassment necessary to sustain a Title VI claim. Accordingly, the record cannot support a finding that Plaintiffs were subjected to actionable racial harassment under Title VI.

Plaintiffs also rely on more generalized allegations of racially offensive comments occurring in the classroom. These allegations likewise fail to establish actionable harassment because they lack the specificity and severity necessary to demonstrate conduct that was sufficiently severe or pervasive. On October 12, 2023, Mr. Baylis emailed Assistant Principal Bailey identifying five white male students who allegedly made racist comments toward A.B. during his eighth-grade English class. (Exhibit L). Beyond these generalized accusations, Plaintiffs were unable to provide specific details regarding the alleged comments, such as who made particular statements, when the statements were made, or the precise content of the remarks. There is likewise no allegation that any of the comments were accompanied by threats,

intimidation, or any indication of potential violence. Without such details, the allegations amount to vague assertions of classroom teasing rather than evidence of targeted racial harassment.

Even accepting Plaintiffs' allegations as true, the conduct described falls within the type of ordinary peer conflict and immature name-calling that courts have repeatedly held does not rise to the level of actionable discrimination. The Supreme Court has emphasized that federal civil rights laws do not transform schools into mechanisms for policing every instance of student teasing or offensive language. Rather, liability arises only when harassment is so severe, pervasive, and objectively offensive that it effectively denies a student equal access to educational opportunities. *See Davis v. Monroe County Board of Education*, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). As the Court explained, simple acts of teasing and name-calling among schoolchildren, even when those comments reference differences in race, are generally insufficient to meet this demanding standard.

The record does not demonstrate the type of severe, pervasive, and objectively offensive harassment required to establish liability under Title VI. Even viewed in the light most favorable to Plaintiffs, this evidence reflects, at most, sporadic interpersonal conflicts and offensive remarks that courts have consistently held fall short of actionable discrimination. Because Plaintiffs cannot establish that A.B. or G.B. were subjected to actionable racial harassment, their Title VI claim necessarily fails as a matter of law.

## C. The District was not deliberately indifferent to the Student-on-Student harassment.

Assuming arguendo that Plaintiffs can establish actionable racial harassment, they must also establish that the District was deliberately indifferent to the racial harassment A.B. and G.B. faced, which caused subsequent harm. The deliberate indifference standard makes schools liable when they refuse to take action to bring the recipient into compliance," *Gebser,* 524 U.S. at 290.,

not when they take action that ultimately fails to "purge their schools of actionable harassment, *Davis*, 526 U.S. at 648. The test asks not whether the school's efforts were ineffective but whether they amounted to an official decision not to remedy the violation. *Id*. at 642. "By design and effect, the *Davis* Court's Title IX private cause of action against a school for its response to student-on-student sexual harassment is a 'high standard' that applies only 'in certain limited circumstances.'" *Kollaritsch*, 944 F.3d at 619 (quoting *Davis*, 526 U.S. at 643, 119 S.Ct. 1661). It requires only that school administrators respond to known peer harassment in a manner that is not "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. This standard is not a "mere 'reasonableness' standard," and "there is no reason why courts ... [can]not identify a response as not 'clearly unreasonable' as a matter of law." Id. at 649.

"[T]he court is not to 'second guess' disciplinary decisions made by school officials or require expulsion in every case of misconduct; rather, if the response of the school officials can be considered reasonable, a finding of deliberate indifference is not appropriate." *Mathis v. Wayne Cnty. Bd. of Educ*., 782 F. Supp. 2d 542, 549 (M.D. Tenn. 2011). Further, Title VI does not give victims a right to make particular remedial demands. *See Davis*, 526 U.S. at 648. The court of appeals reminds us that "the harasser has 'constitutional [and] statutory' rights too." *Foster v. Bd. of Regents of Univ. of Michigan*, 982 F.3d 960, 969 (6th Cir. 2020) (quoting *Davis*, 526 U.S. at 649, 119 S.Ct. 1661). The *Foster* court pointed out that "[a]lleged harassers have not been shy about suing school administrations under Title IX and § 1983 for denying them educational opportunities without the requisite notice and process." *Ibid.* (citing *Doe v. Baum*, 903 F.3d 575, 580 (6th Cir. 2018)).

Here, the District was not deliberately indifferent to any of the alleged harassment of which it had actual notice. As discussed above, there are only four "incidents" of alleged

17

harassment of which the District had actual notice. The District responded to each immediately upon receiving notice in a way that was reasonable in light of the specific circumstances.

Looking first at the September 6, 2023 incident in which B.T. sent racially offensive text messages to A.B., the District first received notice of the messages from Plaintiffs on September 6, 2023. (Exhibit F). The District promptly took corrective action. B.T. was issued a five-day out-of-school suspension beginning the following day, September 7, 2023. (Exhibit G). Upon returning to school, he was also required to complete an Offensive/Racial Language lesson during his lunch periods on September 14–15, 2023. (*Id.*). The District's response was effective, as there were no further reports of B.T. engaging in harassment toward A.B. after he returned from suspension. *See Foster*, 982 F.3d at 970 (prompt investigation and escalating punishments not deliberate indifference); *Stiles ex rel. D.S. v. Grainger County*, 819 F.3d 834, 849 (6th Cir. 2016) (no deliberate indifference where the school promptly investigated harassment claims and calibrated punishments to investigation results).

Likewise, when Plaintiffs reported the social media post containing an image of a girl in blackface on October 11, 2023, the District again responded promptly. By the following day, October 12, 2023, administrators had confirmed that no student within the District matched the name associated with the image. The District circulated the image among staff at the various schools within the District in an effort to determine whether anyone could identify the individual depicted. In addition, the District followed up with Plaintiffs that same day to obtain information about how A.B. had received the image so that administrators could further trace its source. (Exhibits J and H). Under these circumstances, the District's actions reflect a prompt and reasonable response and cannot plausibly be characterized as an official decision not to remedy the violation as required to establish deliberate indifference under Title VI.

Further, as the image was not targeted at, or sent directly to G.B. or A.B. by a student within the District, the District cannot be deliberately indifferent to the behavior. The deliberate indifference standard holds a school liable for harassment only where the school "exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis*, 526 U.S. at 645, 119 S.Ct. 1661.  There is no deliberate indifference to social media harassment where there is no evidence that the school had significant control over the students' harassment. *See Gordon v. Traverse City Area Pub. Schs.,* 686 F. App'x 315, 324 (6th Cir. 2017).

Looking at the third complaint made to the District by the Plaintiffs, in which Mr. Baylis provided Mr. Bailey with a list of five white male students who had allegedly made racist comments to A.B. during their English. As with the previously reported incidents, the District immediately investigated the complaints. The District questioned the five students who were identified and while all but one of the students denied making the alleged statements, Mr. Bailey warned the students that such conduct would not be tolerated. The five named students were also required to participate in racial sensitivity training. (Exhibit H). A.B. was also offered the option of eating his lunch in the counseling office to limit the potential for these students to harass him, which he and his friends took advantage of at times. (Exhibit M). While Plaintiffs may have preferred more severe punishment be levied against these five students, Plaintiffs do not have a right to make particular remedial demands. *See Davis*, 526 U.S. at 648.

Moreover, Plaintiffs admit that the students were intentionally concealing the alleged harassment from school officials, further limiting the District's ability to address the conduct sooner. (Exhibit D, at pp. 131-132). The Districts response to this complaint was effective, A.B. admits the situation improved significantly after the students were spoken to by Mr. Bailey and

19

there were no further complaints made by Plaintiff's or their children about additional comments from the identified students.

The Sixth Circuit's recent decision in *Malick v. Croswell-Lexington District Schools*, 148 F.4th 855 (6th Cir. 2025), strongly supports summary judgment here. In *Malick*, the court affirmed summary judgment for a school district facing claims that it was deliberately indifferent to student-on-student racial harassment. The alleged harassment in that case spanned multiple school years and included racial slurs, threats, and other offensive conduct. Despite the persistence and seriousness of those allegations, the Sixth Circuit held that the district's responses, including investigations, discipline, and communication with parents, were not clearly unreasonable under the circumstances. *Id.* at 869.

This case presents far less severe circumstances. The alleged harassment here occurred over only a few months and involved significantly fewer incidents. Yet even in *Malick*, where the alleged harassment was more prolonged and serious, the Sixth Circuit still found the district's response legally sufficient.

The District's actions here were at least as responsive as those approved in *Malick*. When the District learned of the September 5, 2023, text messages containing racially offensive language, administrators investigated the incident, suspended the responsible student for five days, and required completion of an offensive/racial language lesson. The District also investigated the circulation of a blackface image online, attempted to identify the individual depicted, and followed up with Plaintiffs regarding how A.B. received the image. Similarly, when students allegedly made racist comments during English class, administrators questioned the students involved, warned them the conduct would not be tolerated, and required them to

participate in racial sensitivity training. Following this intervention, A.B. acknowledged that the situation improved and no further complaints were made regarding those students.

Under *Malick*, these actions cannot be considered clearly unreasonable. If the responses in *Malick*, addressing years of repeated harassment, were sufficient to defeat deliberate indifference, the comparatively limited allegations here, coupled with the District's prompt investigations and corrective actions, likewise fail to establish liability under Title VI. Accordingly, summary judgment is warranted.

The reasonableness of the District's response is further confirmed when compared to Sixth Circuit decisions addressing deliberate indifference in the Title IX context. First, compare these circumstances to a case with far less proactive conduct by the school and in which the school nonetheless prevailed. *Stiles ex rel. D.S. v. Grainger County*, 819 F.3d 834, 849 (6th Cir. 2016). *Stiles*, involved a school administration that responded to a victim's allegations of continued peer-on-peer harassment, filed over the course of 18 months, with one verbal warning after another. *See* Id. at 849. However, the court concluded because the school went beyond merely talking to the offender and took some proactive steps to protect the victim from further harassment, the District could not be found liable because they failed to eliminate the peer harassment altogether. Id. at 850-51.

Now compare these circumstances to cases in which the schools were found to be deliberately indifferent. In *Davis*, a fifth-grade boy engaged in a months-long operation against a female seatmate that included graphic, vulgar sexual statements and sexual contact that occurred in the classroom in the presence of a teacher. Despite the student's immediate and continued reporting, the school took no disciplinary action and made no effort to separate the harasser from the victim for several months. *Davis*, 526 U.S. at 633-635. In *Vance v. Spencer County Public*

*School District*, 231 F.3d 253 (6th Cir. 2000) harassers touched the plaintiff inappropriately in virtually every class for over a year. Despite repeated complaints by the victim and her mother to 29 school officials, they responded only with a string of verbal warnings. The Court found the school's pattern of non-responses deliberately indifferent. Id. at 262–63. Likewise, in *Patterson v. Hudson Area Schools*, 551 F.3d 438 (6th Cir. 2009) the victim suffered years of persistent harassment that included daily bullying, physical assault, and sexual assault. The Court found a cognizable claim of deliberate indifference because the school's only response to the victims repeated requests for help was to employ the same type of verbal reprimands that had already shown to be ineffective. *Id.* at 449.

**D. The District was not deliberately indifferent to the Employee-on-Student harassment.**

Plaintiff's final complaint, relating to the interaction on Halloween night between Adam and his bus driver, Defendant Haworth, also does not support the finding of deliberate indifference. First, the District cannot be deliberately indifferent to behavior it is not expected to control. *Doe v. Plymouth-Canton Cmty. Schs*., No. 19-10166, 2022 WL 1913074, at *10 (E.D. Mich. June 3, 2022). The incident took place off school property and was neither sponsored nor controlled by the District. Second, the District's reaction was reasonable in light of the circumstances. When the Plaintiff's reported the incident, the District cooperated with law enforcement during their investigation, and ensured that Plaintiff's had the contact information for its School Resource Officer, Officer Henry Kite, as a potential resource. The District also ensured that A.B. was checked in on throughout the following school day to see how he was doing following the incident. Plaintiff's disenrolled their children from the District on November 1, 2023, removing any need for further action by the District to ensure no further incidents between A.B. and Defendant Haworth could occur.

### E. Plaintiffs have not pled and there is no evidence showing subsequent actionable Employee-On-Student harassment

More fundamentally, Plaintiffs cannot satisfy the requirement that the District's alleged deliberate indifference to the alleged employee-on-student harassment must cause students to suffer further harassment after the school has actual knowledge of the alleged misconduct. See *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999). The Sixth Circuit has made clear that liability attaches only where a school's response to known harassment is so unreasonable that it subjects the student to additional, post-notice harassment. *Kollaritsch v. Michigan State University Board of Trustees*, 944 F.3d 613, 620–23 (6th Cir. 2019). Without such subsequent harassment occurring after the institution receives actual notice, there can be no liability as a matter of law.

Here, the alleged incident involving Defendant Haworth was a single occurrence of employee-on-student harassment, separate and distinct from the earlier allegations of student-on-student harassment. There is no evidence that any similar employee-on-student conduct occurred prior to this incident or at any time after the District became aware of the allegation. Because there was neither prior employee-on-student harassment nor any further teacher-on-student harassment following the District's notice of the incident, Plaintiffs cannot establish the required causal link between the District's response and any subsequent harm.

### V. PLAINTIFFS' EQUAL PROTECTION CLAUSE CLAIM SHOULD BE DISMISSED.

The Sixth Circuit recognizes two methods of proving an equal protection violation based on a school official's response to peer harassment: (1) disparate treatment of one class of students who complain about bullying as compared to other classes of students, *see Soper v. Hoben,* 195 F.3d 845, 852 (6th Cir.1999), and (2) deliberate indifference to discriminatory peer harassment, *see Shively v. Green Local Sch. Dist. Bd. of Educ.,* 579 Fed.Appx. 348, 356–57 (6th

Cir.2014). Stated another way, a plaintiff "must show either that the defendants intentionally discriminated or acted with deliberate indifference." *Id.* While Plaintiffs appear to be attempting to proceed under only the deliberate indifference method, Plaintiffs cannot succeed under either method.

### A. Plaintiff has offered no evidence of Disparate Treatment.

Under the disparate treatment theory, a plaintiff claiming race discrimination must introduce evidence that his complaints of peer harassment were treated differently by school officials than students of other races' similar complaints. *See Soper,* 195 F.3d at 852. Here, Plaintiff has failed to provide evidence of any similar complaints of peer harassment by other students of a different race which were treated differently by the school.  Therefore, because Plaintiff's have offered no evidence of how Defendants treated other students who similarly complained about or suffered from bullying, their equal protection claim cannot survive summary judgment based on a disparate treatment theory. *Stiles ex rel. D.S. v. Grainger Cnty., Tenn.,* 819 F.3d 834, 852 (6th Cir. 2016). The Sixth Circuit does not hesitate to affirm summary judgment where a plaintiff fails to identify similarly situated individuals who were treated differently. See, e.g., *Dixon v. Univ. of Toledo*, 702 F.3d 269, 279 (6th Cir.2012).

Plaintiffs allegations of disparate Treatment towards their sons with respect to A.B.'s discipline or G.B.'s failure to make the basketball team fare no better. To prevail based on such a theory, plaintiffs must show that their children were similarly situated to the other students involved in all relevant respects. *See Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998). Plaintiffs have failed to make such a showing.

A.B.'s suspension for possessing an airsoft pellet pistol cannot be compared to the white student who possessed a pocket-knife because the two students were not similarly situated. The

airsoft pistol and pocket-knife are materially different and are treated differently under the District's policies. (Exhibit U, Student Handbooks). The circumstances surrounding each incident were also markedly different. A.B. possessed the airsoft gun for several hours, bragged to other students about having it, and relinquished it only after being questioned by school staff. By contrast, the other student voluntarily turned the knife into the office before the start of the school day. These materially different circumstances preclude any finding that the two students were similarly situated.

Plaintiffs likewise offer no evidence that G.B. was similarly situated to the students who made the 7th grade basketball team in October 2023. They present no evidence that those students had similar disciplinary histories or comparable basketball ability, both highly relevant factors in team selection. Mr. Stahr confirmed that G.B. did not make the team because he repeatedly engaged in disruptive behavior during class and because his basketball skills were inferior to the other students who tried out. (Exhibit Q). Plaintiffs rely only on their own deposition testimony to claim that G.B. possessed similar skills. But conclusory testimony, without supporting facts, is insufficient to create a genuine issue of material fact or survive summary judgment. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009); *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020).

**B.  Plaintiffs Cannot Establish Deliberate Indifference by Defendants**

Under the Deliberate Indifference theory plaintiffs must first offer evidence that their sons were subjected to discriminatory peer harassment. *See Williams v. Port Huron Sch. Dist., 455 F. App'x 612, 618 (6th Cir. 2012)*; *DiStiso v. Cook,* 691 F.3d 226, 241 (2d Cir.2012) ("[T]o succeed on a § 1983 equal protection claim of deliberate indifference to student-on-student racial harassment, well established law requires a plaintiff to prove ... that the child in question was in

fact harassed by other students based on his race."). Second, the plaintiffs must offer evidence that school officials responded to the discriminatory peer harassment with deliberate indifference, and therefore in a manner clearly unreasonable in light of known circumstances. *See Shively,* 579 Fed.Appx. at 357 (citing *Vance,* 231 F.3d at 260). The deliberate indifference standard used for proving a § 1983 equal protection violation in peer harassment cases is "substantially the same" as the deliberate indifference standard applied in Title IX cases. *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.,* 400 F.3d 360, 369 (6th Cir.2005).

As discussed above, Plaintiffs failed to show that Defendants Messenger, Bailey or Moon acted with deliberate indifference to the complaints of peer harassment of which each had actual notice. Messenger, Bailey and Moon promptly investigated each incident of which they were aware, and in each incident took measures within their power to punish the students found culpable and to prevent further episodes of mistreatment. A reasonable jury could not find that these actions exhibited deliberate indifference to Plaintiffs' claims of discriminatory harassment, and therefore their claims under the equal protection clause must fail as well.

With respect to Defendant Hayworth, Plaintiffs have failed to show that he had actual knowledge of any of the peer harassment that Plaintiffs children allegedly faced. Without actual knowledge of any peer harassment, Defendant Hayworth cannot be found to be deliberately indifferent. Thus, he cannot be liable for the alleged Equal Protection violation. A § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial, and plaintiff does not meet this burden by showing only that a defendant was one of several others who may have committed the unconstitutional act. *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 491 (6th Cir. 2020).

## C.  The Individual Defendants are protected by Qualified Immunity

To determine whether the individual defendants are entitled to qualified immunity, the court must determine whether, considering the allegations in a light most favorable to the injured party, a constitutional right has been violated, and whether that right was clearly established at the time of the alleged violations. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Qualified immunity shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." *Humphrey v. Mabry,* 482 F.3d 840, 846 (6th Cir.2007) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 847.

Here, Plaintiffs allege that their sons were deprived of their right to equal protection due to Defendants' allowing, condoning, and failing to address the racial harassment and discrimination they experienced, in violation of the 14th Amendment. However, to demonstrate a violation of the Fourteenth Amendment's Equal Protection Clause, Plaintiffs must demonstrate Defendants' racially discriminatory intent with respect to their response to the student-on-student harassment. Defendants must have been deliberately indifferent to the allegations of student-on-student racial harassment. *Gant ex rel. Gant v. Wallingford Bd. of Educ.,* 195 F.3d 134, 139–40 (2d Cir.1999) (citations omitted).

Even when considering the facts construed in the plaintiffs' favor, as discussed above the individual defendants were not deliberately indifferent to student-on-student racial harassment and, therefore, did not violate the plaintiffs' constitutional right to equal protection under the law.

The record instead demonstrates that District administrators responded to each reported incident by investigating the allegations and taking steps reasonably calculated to address the concerns brought to their attention. Such actions are fundamentally inconsistent with a finding that Defendants intentionally discriminated against Plaintiffs or knowingly permitted racial harassment to persist.

Accordingly, because Plaintiffs cannot establish that the individual defendants violated a constitutional right, the qualified immunity analysis ends at the first step. Even if Plaintiffs could establish such a violation, they have not identified clearly established law that would have put reasonable school officials on notice that the actions taken in response to the reported incidents were constitutionally deficient. The individual defendants are therefore entitled to qualified immunity, and Plaintiffs' § 1983 claims against them must be dismissed.

## VI.   PLAINTIFFS' FAILURE TO TRAIN AND SUPERVISE CLAIM SHOULD BE DISMISSED.

Under Count VI of their Complaint the Plaintiff brings claims for failure to train and supervise against the District as well as Defendants Messenger, Bailey and Moon in their **official** capacities. (Complaint, ECF No. 1 at p 85.) However, suing a government employee in his official capacity generally represents only another way of pleading an action against an entity of which an officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). When a § 1983 complaint asserts a claim against a government entity and a government official in his official capacity, federal courts will dismiss the official-capacity claim. *Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996). Therefore, as these individual defendants are being sued only in their official capacity under Count VI, the claims against them under Count VI must be dismissed.

A municipal entity, like the District, cannot be held liable under § 1983 for an injury inflicted solely by its employees. *Thomas v. Chatanooga*, 398 F.3d 426, 429 (6th Cir. 2009). But it may be sued when its official "policy or custom" triggers a violation of a plaintiff's constitutional rights. *Monell v. Dep't Soc. Servs. of City of New York*, 436 U.S. 658, 694-95, 98 S.Ct. 2018 (1978).  However, a municipal entity cannot be liable if their officers commit no constitutional violation in the first place. *Roell v. Hamilton Cnty.*, 870 F.3d 471, 487 (6th Cir. 2017). A plaintiff can establish such an unconstitutional custom or policy by producing evidence that shows: (1) the existence of an illegal official policy; (2) that an official with final decision-making authority ratified illegal actions; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Thomas*, 398 F.3d at 426.

Plaintiffs attempt to proceed on a failure to train or supervise theory, and therefore they need evidence that: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the District's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Showing deliberate indifference in this context requires evidence that a municipality "completely disregarded" its duty to train. *Harris v. City of Saginaw*, 62 F.4th 1028, 1038 (6th Cir. 2023). Further, where relevant training is given, showing that "additional training would have been helpful" does not establish municipal liability. *Mosier v. Evans*, 90 F.4th 541, 550 (6th Cir. 2024).

Here, Plaintiffs' failure-to-train and failure-to-supervise claims fail for two primary reasons. First, the undisputed record demonstrates that the District provided reasonable and adequate training and supervision for its employees. The District's Board of Educations maintains policies prohibiting harassment by both students and employees and staff receive

training regarding their obligations under these policies. (Exhibit S, Applicable Board Policies). The District's prohibition on unlawful harassment is also set forth in its Employee Handbooks, which are provided to all employees at the time of hire (Exhibit V, Employee Handbook). In addition, District staff participate in annual professional development that includes, but is not limited to, training on Diversity, Equity and Inclusion awareness, Cultural Competence and Racial Bias, as well creating a respectful workplace and learning culture. (Exhibit W, District Training). Students are likewise subject to these expectations, both the Middle School and High School handbooks contain a Code of Student Conduct prohibiting harassment and discrimination based on race and other protected characteristics. (Exhibit U).

Second, Plaintiffs have presented no evidence that the District disregarded its duty to train or supervise employees or that it maintained a practice of tolerating misconduct. Nor is there evidence that the District ignored an obvious need for additional training or supervision. To the contrary, when the District received reports of inappropriate conduct between students, it promptly investigated the allegations and imposed discipline where warranted. Similarly, when allegations of inappropriate conduct by staff were reported, the District again investigated and, when appropriate, fully cooperated with law enforcement.

Moreover, the District cannot be liable under a failure-to-train or supervise theory because its officers did not commit any constitutional violation in the first place. As discussed above, Plaintiffs cannot establish that any District employee acted with deliberate indifference to student-on-student racial harassment or otherwise violated Plaintiffs' constitutional rights. Without an underlying constitutional violation by its officers, the District cannot be held responsible for alleged failures in training or supervision.

## VII.    PLAINTIFFS' CLAIM FOR VIOLATION OF DUE PROCESS SHOULD BE DISMISSED.

Here, Plaintiffs claim through *§ 1983* that defendants deprived A.B. and G.B. of their due process rights by failing to provide a procedure or mechanism for victims of racial harassment and discrimination to seek redress or protection within the school district. Plaintiffs allege that the District does not have adequate policies, procedures or practices in place to protect students from racial harassment, nor a clear process for addressing complaints of racial discrimination and as a result, A.B. and G.B. were left without an effective remedy, which further exacerbated the harm they allegedly suffered.

Plaintiffs rely on the substantive component of the Fourteenth Amendment. That amendment provides that no state can deprive a person of life, liberty, or property without due process. U.S. Const. amend. XIV, § 1. "But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). So the clause does not "impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.* And, in general, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. 998.

However, "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198, 109 S.Ct. 998. One such instance is when the state renders a person "more vulnerable to" the dangers that befell him. *Id.* at 201, 109 S.Ct. 998. Thus, we have held that "when the State 'cause[s] or greatly increase[s] the risk of harm to its citizens ... through its own affirmative acts,' it has established a 'special danger' and a duty to protect its citizens from that risk." *Jones v. Reynolds*,

438 F.3d 685, 690 (6th Cir. 2006) (alterations in original) (quoting *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1066 (6th Cir. 1998)).

This is known as the state-created danger doctrine and it imposes a demanding standard. To succeed with it, plaintiffs must show three things. First, they must show an affirmative act by the state which either created or increased the risk that A.B. and/or G.B. would be exposed to an act of violence by a third party. *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003). Next, they must establish a special danger to A.B. and/or G.B. wherein the state's actions placed them specifically at risk, as distinguished from a risk that affects the public at large. *Id.* And finally, they must show that the state was aware of the "substantial risk of serious harm" and responded in a way that was "conscience shocking." *Doe v. Jackson Local Sch. Bd. of Educ.*, 954 F.3d 925, 934 (6th Cir. 2020). The third element of that formula requires a showing of at least deliberate indifference, and the government's conduct must be so egregious that it can be said to be arbitrary in the constitutional sense. *Id.* at 449-50 (quoting *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 469 (6th Cir. 2006)).

Here, Plaintiffs' claim fails for two reasons. First, Plaintiffs are simply incorrect that the District does not have procedures for victims of racial harassment and discrimination to seek redress or protection. The District's Board of Education has a number of policies in place which prohibit discrimination, including racial discrimination, both by students and staff members of the District. Likewise, both the Student Handbooks and the Board of Education Policies contain procedures for reporting bullying or grievances under Title VI or other civil rights legislation to the District. (Exhibits S and U). The District's policies and procedures in place to protect students are reasonable, shared in multiple places and any failure to know, understand or take use of them is that of Plaintiffs.

Second, regardless of whether the Plaintiffs are correct regarding the adequateness of the District's policies and procedures, Plaintiffs cannot establish the necessary elements of a state-created danger claim. Specifically, Plaintiffs have failed to identify any affirmative act by the District or its employees that created or increased the risk that A.B. and/or G.B. would be exposed to harm. The court of appeals consistently has rejected attempts to impose liability based merely on inaction or an allegedly insufficient response by school officials. *Stiles*, 819 F.3d at 854. Failing to punish or insufficiently punishing assailants is generally not an affirmative act, and, even where it is, it typically does not create or increase the plaintiff's risk of harm. The allegations in the Complaint largely assert that the District "allowed" or "failed to stop" the alleged harassment, but such passive conduct does not constitute the type of affirmative act required under the state-created danger doctrine. Moreover, the Sixth Circuit has rejected the notion that any "special relationship" exists between school officials and students that could trigger an enhanced standard of care. *Id.* at 854.

Moreover, Plaintiffs cannot satisfy the requirement of showing that the District was aware of a substantial risk of serious harm prior to their reporting of the alleged harassment. The District had no knowledge of the alleged harassment until Plaintiffs came forward. Once the District became aware of the alleged harassment, it responded promptly and reasonably by immediately investigating and then appropriately punishing those involved. These actions demonstrate that the District was neither deliberately indifferent nor engaged in conduct so egregious that it could be considered arbitrary in the constitutional sense.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs cannot establish any of the essential elements required to sustain their claims. The limited incidents of which the District had actual knowledge

do not rise to the level of severe, pervasive, and objectively offensive harassment necessary to constitute actionable discrimination under Title VI. Even assuming actionable harassment occurred, the undisputed record shows that the District promptly investigated each complaint and implemented reasonable corrective measures. Such responses cannot constitute deliberate indifference as a matter of law. Moreover, Plaintiffs have produced no evidence that the District's response to any reported incident caused or contributed to any subsequent harm to Plaintiffs.

Plaintiffs likewise cannot establish a violation of the Equal Protection Clause, as they have produced no evidence of disparate treatment or deliberate indifference by any Defendant. The individual Defendants are therefore entitled to qualified immunity. Plaintiffs' municipal liability claim also fails because the District maintained appropriate policies and training and, in any event, no underlying constitutional violation occurred. Finally, Plaintiffs' due process claim fails because the Constitution does not impose an affirmative duty on schools to protect students from private conduct, and Plaintiffs have identified no affirmative act by the District that created or increased the risk of harm.

Accordingly, because no reasonable jury could find that Defendants violated Plaintiffs' statutory or constitutional rights, Defendants respectfully request that this Court grant their Motion for Summary Judgment and dismiss Plaintiffs' remaining claims in their entirety with prejudice.

KLUCZYNSKI, GIRTZ & VOGELZANG

Date: March 13, 2026                        By: /s/ Kyle J. Zielinski
                                            Kyle J. Zielinski (P83962)
                                            Mark T. Ostrowski (P49761)
                                            Attorneys for Defendants

## <u>CERTIFICATE OF COMPLIANCE</u>

As required under LCivR 7.2(b)(i), I hereby certify that this brief includes 10,775 words including headings, footnotes, citations and quotations and not including the case caption, cover sheets, any table of contents, any index of authorities, the signature block, attachments, exhibits, and affidavits. This word count was generated by Microsoft Word Version 2602, the processing software utilized to draft this brief.

KLUCZYNSKI, GIRTZ & VOGELZANG

Date: March 13, 2026

By: <u>/s/ Kyle J. Zielinski</u>
Kyle J. Zielinski (P83962)
Mark T. Ostrowski (P49761)
Attorneys for Defendants

35